Mr. Justice Scott delivered the opinion of the Court.- It is insisted’, in this case, that a fair and just interpretation of the statute of limitations will require a plaintiff not only to -commence his suit within the time prescribed by law, but to pursue it with diligence until; the defendant is brought into court by the service of process or its equivalent. And that want of diligence on the part of the plaintiff, after the commencement of his suit, and before the accomplishment of this end, should have the effect tv open the way for the running on of the statute through the first point of time up to the day when continuous" and effective diligence would be resumed. Thereby, in all cases where, after the commencement of the suit, the plaintiff had become negligent before he had brought the defendant into court, in effect making the time of the resumption of continuous and effective diligence the point at which the statute would cease to run, instead of the time of the commencement of the suit, as expressed in the statute. And leaving, for this operation of the statute at the commencement of the suit, only such cases as would be diligently pursued continuously after the joint act of the filing of the declaration and issuing of the writ. In thus stating the question, we have had no regal’d to degrees in diligence, because such questions can only be relevant in case the principle of diligence itself shall be found admissible as a part of this statute rule. And this is conceded to be a positive establishment of law— an iron rule cutting its way, whether consonant with the right and justice of the particular case or not, founded in the-public convenience and necessity, and designed to achieve quiet and repose by closing the door to litigation after a reasonable time shall have been allowed the citizen to assert his claim. And although this rule is beneficial to both partiesfin protecting the defendant from stale demands, and in stimulating the plaintiff to the assertion of his just rights, its greatest benefits are reaped by the public at large in its tendency to diminish litigation, and remove cause for quarrel and strife. And hence it would seem to be a rule that should be firmly upheld by the-courts, and not frittered away either for the benefit of the plaintiff, or the defendant, and especially not so if the great public ends in the view of the Legislature would be in anywise jeopar-dised by any interpretation or construction that might be asked for the particular benefit of either. And the history of this law is full of evidences of the wisdom' of such a cause for the courts, consisting no less in the known-evils which flowed into society from the encouragement of litigation and the stimulus to perjury resulting from the construction’of the English Judges that a new promise would displace the statute bar, than in the interminable labyrinth into which the courts soon found themselves in this attempt thus to construe away the rule for the benefit of the plaintiff. From all of which, they, and the public were finally released only, by a direct appeal to Parliament, after nearly a century of fruitless efforts at relief otherwise. Nor would it seem that a different result, either as to the public or the courts, could have been reasonably expected from any like attempt to construe away the statute for the benefit of the defendant. And yet the courts, both English and American, have since, in many instances, seemed strongly stimulated to such a course of decision, but with much better show of reason. Of which course, one of the consequences is, a contrariety of decisions of opposite tendency, both leading from the iron rule of the statute in vain attempts at logical results and coalescence with the common law: as if the statute of limitations was regarded as an evident principle of natural justice from which harmonious subordinate rules would naturally flow; and was not, as it is in fact, but an arbitrary rule founded upon public policy, in no way dependant for its operation, in any case, upon the condition that such be either just or unjust. And it is»precisely upon such mistaken notions of the real nature of the statute,, that the application, before us, to make the interpretation in question is to be sustained, if sustained at all. And, at a glance,,it is apparent that such an interpretation would be in the face of that fundamdatal rule of construction which forbids the interpretation of that which needs no interpretation, because the meaning of the Legislature is evident, and is expressed in clear and precise language, and leads to no such absurd conclusions, when considered in reference to the subject matter and other provisions of the statute, as to authorize the inference that such consequences were not anticipated. True, there may be some margin for abuses, but the legislature, contemplating such, may have deemed it better to tolerate these,, as an inevitable incident to a general rule, that being certain and simple, was easily comprehended by the people,, than to adopt another' — like that sought to be derived by the interpretation in question — more complex because uncertain as to time, and as to this dependant on contingencies rife with litigation and strife. For, it is easy to be foreseen that if diligence were once admitted as an essential element of this statute rule, that, in the various questions relating to its degree, as well as in those relating to its want of manifestation in defective declarations and defective writs, and in various matters in pais connected with the institution of the suit, and its prosecution up to the time when the defendant shall be brought into court by the service of process, or its equivalent, a field of litigation would be opened as difficult to be maintained by the courts, and as prolific of evil to the public at large, as that thrown open by the English judges, when they held that a new promise would remove the statute bar, and. ultimately would probably have to be made tolerable, as that was, by legislative interpretation. In the only case in which this question of diligence, as an ingredient in the statute rule, has been heretofore in this court, it was held specifically that it was “no answer to the plea of the statute, that, before the action was barred, the plaintiff filed his declaration, and instructed the clerk to issue the writ, but the clerk did not do so until after the limitation had expired.” (The State Bank v. Cason et al., 5 Eng. R. 479.) And, inasmuch as in that case, the court expressly affirmed the correctness of the instruction of the court below on that point, the case goes the length of asserting the doctrine that no quantum of diligence, short of an actual commencement of the suit, can stay the running of the statute. In these doctrines thus promulged, we see nothing to disapprove, and much reason to affirm their correctness, and in harmony with them shall hold, in the case before us, that the actual commencement of the suit is sufficient to stop the running of the statute without any regard to, or dependence upon, any after diligence of the plaintiff in its prosecution. Finding no error in the record, the judgment must be affirmed wit costs.